UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                    Case No. 14-CR-3

MICHAEL ANGLIN,

    Defendant.

DECISION AND ORDER SUSTAINING OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION AND DENYING MOTION TO SUPPRESS (DOC. 21)

Although a magistrate judge has authority to decide several motions, as to a motion to suppress evidence a magistrate judge may only propose findings and make recommendations. The ultimate decision on suppression motions is for the district judge. 28 U.S.C. § 636(b)(1)(A), (B); Fed. R. Crim. P. 59(b)(1). The district court judge must review de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)©; Fed. R. Crim. P. 59(b)(2), (3). Portions of a recommendation to which no one objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The clear error standard means that the court can overturn the magistrate judge's ruling only if it is "left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997).

In this instance, the magistrate judge recommends that the court grant Michael Anglin's motion to suppress. Neither party objected to the magistrate judge's recitation of facts or summary of applicable law. Consequently, after due consideration the court sees

no clear error with that portion of the recommendation and will adopt the magistrate judge's factual findings.

The United States objects to the magistrate judge's application of law to the facts. Thus, the court must review the magistrate judge's conclusion de novo. This court adopts the magistrate judge's summary of the law generally, but supplements it as set forth below. Hence, for the following reasons the government's objection will be sustained and the defendant's motion to suppress will be denied.

The disputed issue is whether there was probable cause for Michael Anglin's arrest. The court must assess the totality of the circumstances to decide whether the facts known to the officers at the time of arrest were sufficient to warrant a prudent person to believe that Anglin had committed or was committing an offense. *See Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983); *Adams v. Williams*, 407 U.S. 143, 148 (1972); *United States v. Navarro*, 90 F.3d 1245, 1254 (7th Cir. 1996). When the totality of the circumstances includes tips from a confidential informant, the court must consider the informant's veracity, reliability, and basis of knowledge. *Gates*, 462 U.S. at 233; *United States v. Olson*, 408 F.3d 366, 370 (7th Cir. 2005). A strong showing in one area may compensate for a deficient showing in another. *Gates*, 462 U.S. at 233. For instance, an explicit and detailed description of alleged wrongdoing and first-hand knowledge may give weight to a tip, even if an informant's motives are questionable. *Id.* at 234. To assess the value of an informant's tip, the court may look at whether the informant had first-hand knowledge, the amount of detail provided by the informant, and the extent to which police corroborated the informant's statements. *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009); *Olson*, 408 F.3d at 370. "[I]f a tip has a relatively low degree of reliability, more information

will be required to establish the requisite quantum of suspicion [or cause] than would be required if the tip were more reliable." *Alabama v. White*, 496 U.S. 325, 330 (1990).

That the verification of an informant's details concerns only "innocent activity" is not determinative; seemingly innocent activity may become suspicious in light of the tipster's information. *Gates*, 462 U.S. at 243 n.13. For instance, all of the corroborating detail confirmed in *Draper v. United States*, 358 U.S. 307 (1959), was of entirely innocent activity—that Draper would arrive in Denver by train from Chicago, wearing particular clothing, carrying a tan bag, and walking fast. *Id.* at 309-10; *see Gates*, 462 U.S. at 244 n.13 (describing *Draper*). Probable cause requires only a probability of criminal activity, not an actual showing of such activity. *Gates*, 462 U.S. at 244 n.13.

Further, details concerning future actions by third parties, even if of "innocent activity," that later are shown to be true suggest that the informant has access to reliable information of alleged illegal activities as well. *Id.* at 245. Corroboration of major portions of an informant's predictions can provide a fair probability that the informant has obtained his information from the suspect or someone the suspect trusted. *Id.* at 246. While corroboration of facts existing at the time of a tip are considered in the probable-cause or reasonable-suspicion analysis, an informant's correct prediction of the suspect's future behavior is weightier, as it demonstrates inside information and a special familiarity with the person's affairs, i.e., information not known to the general public. *White*, 496 U.S. at 332. If an informant is shown to be right about some things, he or she can be considered probably right about other alleged facts as well, including the claim that the object of the tip is engaged in criminal activity. *Id.* at 331-32; *Gates*, 462 U.S. at 244. But not every

detail must match or be verified; probable cause does not require perfection or the informant's infallibility.  *See White*, 496 U.S. at 331*; Gates*, 462 U.S. at 245 n.14.

In *Gates*, probable cause existed to search the Gateses automobile and home.  An anonymous letter had identified the condominium complex in which the Gateses lived, had advised police that the couple sold drugs, and gave certain specific details (including the date) of an upcoming trip to pick up drugs, involving Susan Gates driving to Florida and Lance Gates flying to Florida then driving back to Chicago.  Police confirmed Lance Gates's address and that an "L. Gates" had an airline reservation from Chicago to Florida on the indicated date.  *Id.* at 225-26.  Agents monitored each end of the flight, confirming that Lance Gates boarded and deplaned, and saw the Gateses depart Florida the next day in their car, driving northbound on an interstate highway.  *Id.*

The Supreme Court found that the anonymous letter alone did not provide probable cause to believe that contraband would be found in the Gateses' home and car.  *Id.* at 227.  An anonymous tip generally provides little to nothing from which one might determine the basis for his or her knowledge or conclude that the tipster is honest or his information reliable.  *Id.*  However, the anonymous tip plus the corroboration with facts that had been accurately predicted supplied probable cause justifying a search warrant.  *Id.* at 241-46.

In *White*, police received an anonymous phone call indicating that a named woman would be leaving a specific address at a specific time in a brown Plymouth station wagon with a broken right taillight, heading to a specific motel while in possession of cocaine in an attaché case.  Police responded to the address, found the car, saw the woman getting into it, and followed the car as it headed in the direction of the motel.  The Supreme Court found that the tip plus the corroborated predicted behavior provided reasonable suspicion

4

to stop the woman. The Court reiterated that an informant's veracity, reliability, and basis of knowledge are highly relevant in determining the value of an informant's tip, in the probable-cause and reasonable-suspicion contexts. 496 U.S. at 328. Under both standards courts look at the content of information possessed by police and its degree of reliability—i.e., quantity and quality. *Id.* at 330.[1]

Just recently, the Supreme Court again addressed the reliability and basis of knowledge of an anonymous tip. In *Navarette v. California*, 134 S. Ct. 1683 (2014), a 911 caller reported that the driver of a particular pick-up truck (color, model, and license plate provided) had just run her off a particular road headed in a particular direction. Police then confirmed that the truck was where it was expected to be. The Court found under the totality of the circumstances that the tip and such confirmation of the tipster's information created reasonable suspicion that the driver of the pick-up-truck had run another vehicle off the road and that the truck should be stopped, though the case was close. *Id.* at 1692. Eyewitness knowledge "len[t] significant support to the tip's reliability" and contemporaneous reports have been considered reliable. *Id.* at 1689. Further, the caller's use of a 911 system, which can trace callers, suggested veracity because the system safeguarded against false reports. *Id.*

In the present case, the magistrate judge considered that in the totality of the circumstances, although the informant's information and corroboration by police provided

---

[1] The Court noted that although the same factors are to be considered regarding an informant's tip under either standard, a less-detailed tip and fewer corroborated details may suffice for reasonable suspicion even if not for probable cause. *White*, 496 U.S. at 329; *see id.* at 330 ("Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.").

5

reasonable suspicion, and concluded they did not rise to the level required for probable cause. This court respectfully disagrees.

Here, the informant was not anonymous. He approached law enforcement voluntarily, identified himself, was interviewed, provided ongoing information rather than a one-time tip, and agreed to wear a wire. His residence at a halfway house suggests that he would face repercussions if he was misleading authorities. These facts enhance the informant's veracity. Substantially more signs of veracity exist here than in *Navarette* where the court noted the 911 system allows for identifying and tracing callers. Next, the informant's basis of knowledge was first hand, confirmed by his presence at the halfway house when David Anglin resided there, the informant being picked up by Michael Anglin, and the level of detail the informant provided regarding the guns he saw and the Anglins' cell phone numbers. Moreover, several reasons exist for finding the informant's information reliable. The informant provided specific information regarding—and police confirmed the accuracy of—the location of Michael Anglin's residence, the car Michael Anglin drove, David Anglin's felony criminal history, and that David Anglin would sometimes get picked up by his girlfriend and ride in her white Escalade. The informant contemporaneously reported to police, especially on the morning he said the armed robbery was going to occur. And finally, importantly, the informant accurately predicted that Michael Anglin would pick him up at the corner of Fond du Lac and Center at a certain time and that the planned armed robbery would occur around 74th Street and Capitol, which corresponded with the direction Michael Anglin drove after picking the informant up. These indicia of veracity, reliability, and basis of knowledge provide far more than what existed in the *White* and *Navarette* cases, where reasonable suspicion was at issue.

Instead, they are on the level of *Gates*. Though the informant here did not predict as much future behavior as occurred in the *Gates* case, the tip in *Gates* was anonymous and police had no means of knowing the tipster's veracity or basis of knowledge, whereas here those factors were solid.

The magistrate judge compared this case to *United States v. Foster*, 478 F.2d 1001 (7th Cir. 1973), in which probable cause was found to exist, and concluded that the facts in this case did not rise to such a level. Again this court disagrees. The informant in *Foster* had not provided prior tips establishing his veracity or reliability, similar to the informant here; he identified the location of the predicted robbery as a bank in Elkhart County, Indiana, near a gymnasium—not substantially more specific than the location given in the present case; he provided the type of vehicle to be used, similar to the information here; the *Foster* informant identified the alleged robbers by name and established that he had first-hand information, similar to the informant in this case. Yet probable cause existed in *Foster*. Though the informant in *Foster* may have provided more detail concerning the predicted clothing of the alleged robbers, the informant in the present case put himself at risk by continuing his involvement with the Anglins, contacting police as events unfolded, and agreeing to wear a wire. This court does not view the two cases as dissimilar enough to say that probable cause existed in *Foster* but not here.

Further, the informant and tip in the instant matter were more credible than those in *Olson*, another case in which probable cause existed. After being arrested, Olson's nephew, Joseph, told police that he had gone to Olson's home to steal marijuana, he had seen marijuana and several guns at Olson's house a few days earlier, and Olson was a convicted felon. Police corroborated Joseph's statement with a concerned citizen's tip

made four months earlier that Olson sold marijuana out of his home and stored large quantities of drugs there; other vague reports of possible drug trafficking by Olson; and a criminal history check confirming Olson's drug convictions. *See Olson*, 408 F.3d at 368-69. According to the Seventh Circuit, "while the weight of each item when assessed separately may be slight, together they suffice to corroborate Joseph's story; and, when viewed under the 'totality-of-the-circumstances' standard, altogether provide enough to establish probable cause." *Id*. at 372 (citation omitted). The facts of the present case are considerably stronger than those in *Olson*. The informant voluntarily approached the police, was not attempting to talk his way out of an arrest, and put himself at risk by continuing his relationship with the Anglins and wearing a wire. Again, he provided detailed information regarding Michael Anglin's residence, the car Michael drove, David Anglin's girlfriend and the car she drove, and the guns he saw, among other things. And the informant accurately predicted that Michael Anglin would pick him up at a precise location and time.

Anglin contends that the only corroborated information was of innocent activity. However, as discussed above, because the informant was correct about certain corroborated facts, he was probably right about other facts as well, including those of criminal activity. *See Gates*, 462 U.S. at 244; *accord Navarro*, 90 F.3d at 1253. Moreover, probable cause requires only a probability of criminal activity, not an actual showing of it; "innocent behavior frequently will provide the basis for a showing of probable cause." *Gates*, 462 U.S. at 243-44 n.13; *Navarro*, 90 F.3d at 1253.

Further, Anglin argues that the police did not have sufficient information to believe he was committing the offense of conspiracy to commit armed robbery. According to

8

Anglin, no conspiracy could occur between the informant, who was a government agent at the time, and him, and no corroborated evidence linked Anglin to the proposed armed robbery talk or actions of his brother. However, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams*, 407 U.S. at 149. Police did not need to corroborate facts as to each element of the crime of conspiracy. When some facts were corroborated, the veracity of this informant and the reliability of his information as to the joint plan or agreement of the brothers to commit an armed robbery were enhanced. Anglin's act of picking up the informant or the Anglins' possession and showing of weapons to the informant could be considered overt acts supporting the crime of conspiracy to commit armed robbery.

For all of these reasons,

IT IS ORDERED that the magistrate judge's recommendation (Doc. 28) is adopted as to findings of fact but rejected as to the conclusion, and the motion to suppress (Doc. 21) is denied.

Dated at Milwaukee, Wisconsin, this 1st day of December, 2014.

        BY THE COURT

        /s/ C.N. Clevert, Jr.
        C.N. CLEVERT, JR.
        U.S. DISTRICT JUDGE