UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                        Case No. 14-CR-3

MICHAEL ANGLIN,

    Defendant.

ORDER DENYING MOTION TO RECONSIDER MOTION TO SUPPRESS
AND MOTIONS TO DISMISS

Michael Green and Dave Anglin resided at a halfway house when Green contacted police about an upcoming armed robbery Dave Anglin and his brother, defendant Michael Anglin, were planning. The information provided by Green to police, particularly to Agent Rickey Hankins, included the location where Green would be picked up by Michael Anglin on the morning of the planned robbery and the general area where the robbery would occur. That morning, following Green's tip, police watched defendant leave his residence (his mother's apartment) in a vehicle like the one Green had said defendant drove, then pick up Green at the specified location and drive in the direction of the alleged planned robbery. Police stopped the vehicle, arrested the occupants, and searched the vehicle.

MOTION TO RECONSIDER DENIAL OF THE MOTION TO SUPPRESS

Prior to trial, defendant moved to suppress evidence obtained following his arrest and the search of the vehicle. Defendant argued that as an informant Green was untested and his information unreliable. The court denied the motion to suppress, pointing to, among other things, Green's predictions regarding defendant's future actions and to police

corroboration of information from Green such as where Anglin's mother lived and what car he drove.

At the end of trial, defendant moved for reconsideration of the motion to suppress, contending that evidence at trial varied from what was in the record when the court ruled on the initial suppression motion, justifying a different ruling. Subsequently, the parties briefed the motion to reconsider and the matter is ready for decision. Defendant contends that the evidence at trial showed that Agent Hankins did not corroborate the information provided by Green about defendant's residence and vehicle. Instead, argues defendant, Green merely confirmed information found by Hankins. Further, argues defendant, "Green's tips on the day of arrest were essentially contemporaneous reports, not predictions." (Doc. 85 at 2.) Hence, he submits that officers did not have probable cause to arrest him.

If the district court denies a pretrial motion to suppress and matters appearing at trial cast doubt on the pretrial ruling, the court should reconsider the issue of suppression. *United States v. Longmire,* 761 F.2d 411, 420 (7th Cir. 1985); *United States v. Regilio*, 669 F.2d 1169, 1177 (7th Cir. 1981). Here, however, the court does not believe that the suppression decision should be revised, even after the testimony at trial.

Hankins's trial testimony on which defendant focuses is that after Green said he had been to defendant's residence and that defendant drove a grey SUV, Hankins investigated and found that defendant's mother lived at a particular address and had a grey or silver Acura SUV registered to her. Hankins then found a photo of the residence and a photo of a silver Acura SUV and showed them to Green, who confirmed that they looked like defendant's residence and vehicle.

2

That Hankins provided a photo of an Acura SUV for Green to confirm does not substantially lessen Green's information regarding the vehicle. About four days before defendant's arrest, Green told Hankins that defendant drove a grey SUV. (Doc. 90 at 309.) That Green did not provide the specific make and model does not negate the value of the information first given by him. Hankins corroborated that information by finding a photo and having Green confirm it was the same make and model of car as he had seen.

Arguably, the confirmation by Green of Hankins's information regarding the residence sounds less trustworthy than if Green had initially pointed out the residence or specified its address. However, Green had told Hankins that Anglin "lived on the edge of town" and the court notes that the address Hankins found for defendant's mother is on the western edge of the City of Milwaukee (*see* Doc. 90 at 319, 368). But, in any event, that Hankins found the address of defendant's mother's residence and Green confirmed the photo did not end the corroboration. After Green's confirmation of the photo, agents surveilled the residence, saw the grey Acura SUV there, observed defendant emerge from the residence and drive off in that vehicle. Green's confirmation of the photo as being where defendant lived was confirmed as accurate before defendant was arrested.

Moreover, Green provided more information than just the residence and car, and agents corroborated some of it. For instance, days prior to defendant's arrest, Green told Hankins about and Hankins confirmed Dave Anglin's felony history, that Dave Anglin would be picked up by his girlfriend Star, and that Star drove a white Escalade. (*See* Doc. 21, Ex. A at 1-2.) Green allowed Hankins to look at the contact numbers in his cell phone, and Hankins obtained toll records and cell-site information associated with those phones. (Doc. 90 at 310.) Other factors made Green's information more reliable. Notably, Green

3

approached the agents with the information regarding the Anglins and Green agreed to and did wear a recording device to record conversations with the Anglins, putting himself at risk.

Regarding defendant's argument that Green was merely making contemporaneous reports rather than predictions of defendant's conduct, the court disagrees. Green's information about a planned robbery on December 17, 2013, was given to officers early that morning, enabling them to set up surveillance at defendant's residence. Hankins testified that around 8:00 a.m. Green told him that defendant was on his way to pick up Green around his halfway house. During or right after that call Hankins watched defendant exit his residence leave in the grey SUV. (Doc. 90 at 321-22.) As Green was not present at defendant's residence, the information was not merely the relay of easily obtained facts about existing conditions that Green could see; it meant that he had inside knowledge of a third party's actions in advance. The key predictions occurred shortly thereafter (between 8:05 and 8:48 a.m.) when Green told Hankins that defendant would pick Green up at Center and Fond du Lac and the planned armed robbery would occur near 74th Street and Capitol. (*See* Doc. 90 at 320-21, 323.) That information was relayed to agents *before* the pick-up occurred. Agents were stationed at the pick-up location observing Green before defendant arrived there. At 8:48 a.m. they saw defendant's car pick up Green on Center Street and then head in the direction of the predicted robbery area. (Doc. 90 at 323-25.) That the timeline was in hours and minutes (unlike days as in *Illinois v. Gates*, 462 U.S. 213, 230, 238 (1983)) does not mean Green failed to predict future conduct by defendant. The key information was provided in advance, not in real time as defendant argues. Green's tips conveyed information not easily obtainable or existing at the time of the tip,

4

regarding future activities of third parties ordinarily not easily predicted. *See Gates*, 462 U.S. at 245.

Further, as stated previously by the court, Green's accuracy on certain predicted facts meant that he was more credible regarding other facts as well. Details concerning future actions by third parties, even if innocent, that are later shown to be true suggest that the informant has access to reliable information of illegal activities as well.[1] *Alabama v. White*, 496 U.S. 325, 331-32 (1990); *Gates*, 462 U.S. at 243-44 n.13, 244-46.

In sum, the trial evidence does not call into question this court's decision on the motion to suppress; the motion to reconsider is denied.

MOTION TO DISMISS COUNT FOUR OR COUNT FIVE FOR MULTIPLICITY

Defendant moves for dismissal of either count four (possession of a firearm) or count five (possession of ammunition) based on multiplicity. He contends he loaded the gun with the ammunition in the bedroom of his home the morning of his arrest, making it one continuous possession. (Doc. 86 at 5.)

A previous motion to dismiss was denied after a recommendation by Magistrate Judge Joseph, to which he did not object. This court adopted the recommendation at the final pretrial conference, finding that the counts charged separate courses of conduct because defendant allegedly possessed the firearm at a time and location different from the ammunition.

---

[1] Although the present decision was made without reliance on the Seventh Circuit's recent opinion in Dave Anglin's appeal, the court notes that the decision here is confirmed. The Seventh Circuit wrote regarding Dave Anglin's arrest that a "reasonably credible informant supplied information that [Dave] Anglin was planning a robbery." *United States v. Dave Anglin*, No. 15-1251, slip op. at 5-6 (7th Cir. Oct. 19, 2015). That informant was Green. His information, with corroboration by officers, provided probable cause for Dave Anglin's arrest.

5

The government submits that defendant waived any right to bring this motion. Not only did defendant not object to the magistrate judge's recommendation but he also did not file this motion at the end of trial or ask for more time to file it. The motion was filed over a month after verdict. The government also opposes the motion based on the merits, arguing that while it is plausible that defendant loaded the firearm with this ammunition prior to leaving his residence the morning of the planned armed robbery, it is also possible that he did not access that box of ammunition in some time.

Defendant believes that he objected to the magistrate judge recommendation or renewed this motion at the final pretrial conference. A review of the transcript of that conference indicates that defense counsel said he "will renew that motion at the close of evidence," suggesting that a further motion or renewal was required. (Doc. 109 at 3.) However, both defense counsel and the court discussed that whether defendant's conduct constituted one or multiple possessions of forbidden items was a question of fact and suggested that the motion was denied on the record at that time. (*Id.* at 3-4.) Regardless of whether defense counsel did or did not renew the motion, the motion will be denied on the merits.

At trial, Agent Sandra DeValkenaere testified that she and Agent Lindemann searched defendant's room at his mother's apartment and found the room to contain about fifty bins, boxes, and totes. (Doc. 90 at 417, 426-27.) The room held so many bins, boxes, and totes that the agents had little room to maneuver. (Doc. 90 at 417-18.) Lindemann found the box of ammunition inside a larger box along with mail postmarked in 2009 and addressed to defendant. (Doc. 90 at 418-19, 422-23, 434.) The box of ammunition was missing ten rounds. (Doc. 90 at 421.)

6

It is possible that defendant loaded the firearm prior to leaving his residence on the morning of his arrest, but no evidence suggests that. Contrary to defendant's argument that the outer box (containing the inner box of ammunition) was found on his bed (Doc. 86 at 5), DeValkenaere testified only that the agents took the boxes that were in the room and set them on the bed while searching them and that Lindemann was sitting on the bed when he found the ammunition. (Doc. 90 at 418.) She did not testify that the outer box was found on the bed when the agents arrived. Instead, the evidence suggests that the outer box was one among many in a room filled with boxes. Further, the date on the mail suggests that the items in the outer box were not in current use. When interviewed after arrest, defendant at first denied that the ammunition was his and then revised his statement to say that he had forgotten about it but took responsibility for it (Doc. 91 at 511-12), suggesting that the ammunition was not loaded into the firearm that morning. Further, although the ammunition in the gun was the same type as in the box of ammunition, the box of ammunition was missing only ten rounds and the firearm recovered from defendant's vehicle upon his arrest was loaded with thirty-one rounds, indicating that the majority of the ammunition in the firearm came from another source.

Moreover, even if the ammunition inside the firearm came from the ammunition box on the morning of defendant's arrest, the firearm was placed in the vehicle beneath the seat and driven away, while the box of ammunition remained inside another box inside the residence. Defendant did not have the box of ammunition in his pocket or in the vehicle when he was arrested. The evidence at trial showed that the ammunition and firearm were stored or located in two separate places. Defendant's separation of the firearm and box of ammunition created distinct courses of conduct. *See United States v. Kennedy*, 682

7

F.3d 244, 256 (3d Cir. 2012); *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996). Thus, the evidence continues to support the finding that these were two distinct crimes.

MOTION TO DISMISS COUNT TWO BASED ON *JOHNSON*

Count one charged defendant with affecting or attempting to affect commerce by robbery by obtaining or attempting to obtain money from employees of the Hampton Service Center against their will by means of actual and threatened force, violence, and fear of injury, in violation of 18 U.S.C. §§ 1951 and 2. (Doc. 48 at 1.) Section 1951 is known as the "Hobbs Act." 18 U.S.C. § 1951 note. It reads, in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

§ 1951(a). As used in this statute, "robbery" means

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

§ 1951(b)(1). The jury found defendant guilty of the crime.

The jury also found defendant guilty of count two, which charged that he "knowingly possessed and discharged a firearm in furtherance of the crime of violence charged in Count One of this indictment" (Doc. 48 at 2). Count two alleged a violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. Section 924(c)(1)(A) provides that "any person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may

8

be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm," shall be subject to a term of imprisonment. For purposes of this section, "crime of violence" means an offense that is a felony and either

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

§ 924(c)(3).

Defendant moves to dismiss count two based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), which held that the residual clause of the Armed Career Criminal Act, 28 U.S.C. § 924(e) (ACCA), was void for vagueness and thus unconstitutional. The ACCA provides that a person convicted of certain firearm possession crimes and who has three previous convictions "for a violent felony or a serious drug offense, or both" be sentenced to not less than fifteen years. For purposes of subsection 924(e), "violent felony" means any crime punishable by imprisonment for more than one year that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

§ 924(e)(2)(B) (emphasis added). The portion in italics is called the "residual clause," and the Supreme Court found that two features conspired to make the clause unconstitutionally vague. *Johnson*, 135 S. Ct. at 2555-56, 2557; *see United States v. Redmond*, No. 3:14-cr-00226-MOC, 2015 WL 5999317, at *1 (W.D.N.C. Oct. 13, 2015). First, the clause "tie[d]

9

the judicial assessment of risk to a judicially imagined 'ordinary case' of a crime, not to real-world facts or statutory elements." *Johnson*, 135 S. Ct. at 2557. Prior cases had found that to apply ACCA the court had to use the "categorical approach" of assessing whether a crime qualified as a violent felony in terms of how the law defined the offense rather than by how a particular offender committed it. *Id.* This assessment requires a court to picture the kind of conduct that the crime involves in the "ordinary case" and then determine whether that ordinary case presented a serious potential risk of physical injury. *Id.* This analysis involved uncertainty about what constitutes an "ordinary case" and how to determine it. For instance, does ordinary-case witness tampering involve a bribe or threats of violence? *Id.* Second, the residual clause left uncertainty about how much risk is needed for a violent felony, especially in light of the comparison to the four enumerated crimes of burglary, arson, extortion, and use of explosives. *Id.* at 2558. For instance, "[d]oes the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information?" *Id.* As the Supreme Court concluded, "[b]y combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.*

Defendant contends that the similarity between § 924(c) and the residual clause invalidated in *Johnson* (i.e., § 924(e)) means that his § 924(c) conviction must be invalidated as well. But there are problems with his argument. First, *Johnson* did not affect the first clause of § 924(e), known as the "force clause." *See United States v. Yang*, 799 F.3d 750, 751 & n.1 (7th Cir. 2015); *United States v. Brownlow*, No. 1:15-cr-0034-SLB-

10

SGC, 2015 WL 6452620, *3 (N.D. Ala. Oct. 26, 2015); *Redmond*, 2015 WL5999317, at *2. Second, the language of the residual clauses, though similar, differs in what may be important aspects. A side-by-side comparison is helpful:

|  | § 924(c)(3) "crime of violence" | § 924(e)(2)(B) "violent felony" | Effect of *Johnson* |
|---|---|---|---|
| force clause | (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another | (i) has as an element the use, attempted use, or threatened use of physical force against the person of another | none |
| residual clause | (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense | (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* | italicized language of § 924(e) invalidated |

Since *Johnson* issued, several courts have found that Hobbs Act crimes qualify as crimes of violence under the force clause, which was unaffected by *Johnson*. In *United States v. Standberry*, F. Supp. 3d ___, No. 3:15CR102-HEH, 2015 WL 5920008 (E.D. Va. Oct. 9, 2015), the defendants argued that under the categorical approach a statute must be assessed as to its most innocent conduct and that a Hobbs Act robbery violation does not necessarily require physical force—it can involve only putting someone in fear of injury. *Id.* at *3. The district court found that reading the language of § 1951(b)(1) in context, even putting someone in fear of injury satisfied § 924(c)(3)'s force clause: "Under a commonsense analysis, any act or threatened act which engenders a fear of injury implicates force and potential violence." *Id.* at *4. "Key to the immediate analysis is the necessity for a taking, from another individual, against their will, property by means of actual or threatened force or violence—or fear of injury. Fear is the operative element

11

facilitating the taking. Under § 1951(b), robbery can be effectuated by either a threat to inflict harm in the future or a use of force in the present." *Id.* The court concluded "that Hobbs Act robbery contains as one of its elements the actual, attempted, or threatened use of physical force against the person or property of another, thereby constituting a crime of violence under § 924(c)(3)(A)." *Id.* at *5.

The defendant in *United States v. Hunter* similarly argued that the Hobbs Act can be violated by putting someone in fear of injury, which could be caused by something other than threatened physical violence. No. 2:12cr124, 2015 WL 6443084, at *1 (E.D. Va. Oct. 23, 2015). The district court rejected the argument, finding that Hobbs Act robbery "is unquestionably a crime of violence" and qualifies under § 924(c)(3)(A). *Id.* at *2; *see United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) (stating that robbery under § 1951 "indisputably qualifies as a crime of violence" under the force clause though holding that conspiracy to commit Hobbs Act robbery qualified under the residual clause).

Other courts have used the "modified categorical approach" to find that a Hobbs Act conviction satisfied the force clause. *See Brownlow*, 2015 WL 6452620, at *3-*4; *Redmond*, 2015 WL 5999317, at *2-*3. Under that approach, when a crime is divisible (meaning that it lists elements in the alternative, providing multiple ways to prove the offense), courts may look beyond the statutory text and consult a limited set of documents in the record, including the indictment and jury instructions, to determine the nature of the crime charged. *Yang,* 799 F.3d at 753. Several courts have found that the Hobbs Act is divisible, with at least two (robbery or extortion) and up to six (robbery, extortion, attempting to rob or extort, conspiring to rob or extort, committing physical violence in furtherance of a plan or purpose to rob or extort, and threatening to commit physical violence in

12

furtherance of a plan to rob or extort) distinct ways by which the crime can be committed. *Brownlow*, 2015 WL 6452620, at *4; *Redmond*, 2015 5999317, at *3; *Standberry*, 2015 WL 5920008, at *6. The court agrees that the statute is divisible. Thus, it can look to the Second Superseding Indictment to determine the nature of the charged crime. *See United States v. Muratovic*, 719 F.3d 809, 817 (7th Cir. 2013) (rejecting an argument that conspiracy to commit Hobbs Act robbery is not a crime of violence because the indictment charged both attempt and conspiracy as crimes of violence under § 924(c)). And the charge in count one solidifies that the force clause applies. Defendant was charged with obtaining or attempting to obtain money from employees of the Hampton Service Center "against their will by means of actual and threatened force, violence, *and* fear of injury." (Doc. 48 at 1 (emphasis added).) The charge is that he used force and violence as well as fear of injury. Further, the instructions told the jury that to find defendant guilty the government had to prove that defendant knowingly obtained money from or in the presence of the employees by taking it against their will "by means of actual or threatened force, or violence." (Doc. 75 at 11.) Thus, under the modified categorical approach, defendant was convicted of a crime that had the element of the use, attempted use, or threatened use of physical force against the person or property of another, satisfying § 924(c)(3)(A).

Because the court finds that defendant's Hobbs Act conviction qualifies as a crime of violence under § 924(c)(3)(A), it refrains from determining whether subsection (B) is unconstitutional following *Johnson*. As discussed by the Supreme Court in *Johnson*, some of the uncertainty about the ACCA residual clause results from the context of following the enumerated crimes of burglary, arson, extortion, or use of explosives for comparison; such

13

enumerated crimes are not part of § 924(c)(3)(B). Further, the ACCA residual clause vaguely names conduct "that presents a serious potential risk of physical injury," while § 924(c)(3)'s residual clause of "substantial risk that physical force . . . may be used" may be considered more precise; the ACCA's residual clause inquiry relates to the possible effect of a person's conduct while § 924(c)(3)(B) inquiry relates to the person's use of force during commission of the crime. And the ACCA had faced significantly more confusion in the courts than § 924(c). *Hunter*, 2015 6443084, at *2. The Ninth Circuit recently rejected such differences and held that 18 U.S.C. § 16(b), which defines "crime of violence" almost identically to § 924(c)(3)(B), is unconstitutional following *Johnson*. *Dimaya v. Lynch*, ___ F. 3d ___, No. 11-71307, 2015 WL 6123546, *1 (9th Cir. Oct. 19, 2015). But *Dimaya* does not bind this court. Nevertheless, this court need not wade into the constitutional issue because there is a statutory basis for its decision.

## CONCLUSION

For the foregoing reasons,

IT IS ORDERED that defendant's renewed motion to suppress (made in court at the end of trial) is denied.

IT IS FURTHER ORDERED that defendant's renewed motion to dismiss (Doc. 86) is denied.

IT IS FURTHER ORDERED that defendant's motion to dismiss (Doc. 102) is denied.

Dated at Milwaukee, Wisconsin, this 6th day of November, 2015.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE